[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (FILED 8/24/90)
Defendants raise three basic grounds or claims for this motion (1) there is no genuine factual dispute as to whether the defendants made certain misrepresentations to the plaintiffs concerning life insurance policies, (2) the plaintiffs failed to commence this action within the applicable statute of limitations, and, (3) the plaintiffs' claims against defendant Profesco should be dismissed, or, alternatively, summary judgment should enter in favor of Profesco because this defendant was not engaged in the business of insurance.
On November 10, 1986, the plaintiffs, G.R. Cummings Co., Inc., Cummings Insulation Co., Inc., and the Claremont Co., Inc. filed a single-count complaint alleging that the defendants, John Hancock Mutual Life Insurance Co., Inc. and Profesco Co., Inc., (now dissolved) made certain false representations to the plaintiffs concerning the sale of insurance policies.
On November 6, 1986, the defendants were served with the original complaint. On August 26, 1987, the plaintiffs filed an amended complaint (113) in which they alleged that the defendants falsely represented that the said insurance policies were superior to other products of the defendant and to the products proposed by a non-party insurance broker. It is also alleged that the defendants further represented that these policies would most effectively meet the plaintiffs' needs. Relying upon these representations, the plaintiffs purchased the insurance policies CT Page 4604 from the defendants' agent/employee, Joseph Buckanavage, and entered into a premium finance agreement with defendant Profesco. Pursuant to this agreement, defendant Profesco was to pay the premiums due on the policies, and the plaintiffs were to repay Profesco the principal and the accrued interest on the premium payments.
The plaintiffs allege that the defendants' conduct has violated Conn. Gen. Stat. 38-61(1)(a), 38-61(1)(f) and 38-61(1)(g) (Connecticut Unfair Insurance Practices Act) and Conn. Gen. Stat. 42-110b (Connecticut Unfair Trade Practices Acts).
On August 24, 1990, both defendants moved for summary judgment on the grounds that (1) the plaintiffs' complaint is premised upon the defendants' alleged misrepresentation, but, during discovery, the plaintiffs' officers admitted that no misrepresentations occurred concerning the policies, (2) the plaintiffs' claims are barred by CUTPA's three-year statute of limitations and (3) the plaintiffs' claims against defendant Profesco should be dismissed, or, alternatively, summary judgment should enter in favor of Profesco because it was never engaged in the business of insurance so it does not come within the purview of CUIPA.
The plaintiffs argue that the defendants' summary judgment motion should be denied in its entirety because (1) plaintiffs have demonstrated the existence of disputed factual issues regarding their CUTPA claim, (2) they have shown the existence of sufficient facts to support their CUTPA claim by focusing on the material issues of collusion, fraudulent concealment and misrepresentation, (3) the plaintiffs may avoid the defendants' statute of limitations grounds of defense because they have shown the existence of a continuing duty owed to the plaintiffs by the defendants that is sufficient to toll the statute until the date the fraud was discovered, and, (4) Profesco should remain a party to this suit because Profesco, now dissolved, was a wholly-owned subsidiary of John Hancock and it has an identical interest to that of John Hancock in the outcome of the suit, therefore, it is an indispensable party.
The pleadings are closed between the parties, as required by Conn. Practice Bk. 379 (rev'd to 1978, as updated to October 1, 1989).
Pursuant to Conn. Practice Bk. 380, the defendant filed a memorandum of law and supporting documentation, (in the nature of depositions). The plaintiff has properly filed a memorandum of law and accompanying affidavits.
Summary judgment "shall be rendered forthwith if the CT Page 4605 pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578 (1990) (quoting Conn. Practice Bk. 384 (rev'd to 1978, was updated to October 1, 1989)). "`[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact."' Connell v. Colwell, 214 Conn. 242, 246 (1990). "`[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.'" Id. A "`genuine' issue . . . has been defined as one which can be maintained by substantial evidence." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 378 (1969). A "`material' fact has been defined . . . as a fact which will make a difference in the result of the case." Catz v. Rubenstein, 201 Conn. 39, 48
(1986).
"`In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party, and the "test is whether a party would be entitled to a directed verdict on the same facts.'" Connell,214 Conn. at 246-47. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500 (1988).
The defendants move for summary judgment on the first ground that, although the plaintiffs' complaint is based upon the defendants' alleged misrepresentations concerning the insurance policies, the plaintiffs' officers have testified during their respective depositions that none of the defendants' employees, agents, or representatives made any such misrepresentations. The defendants point out that plaintiffs' CUIPA claims are brought pursuant to Conn. Gen. Stat. 38-61(1)(a), 38-61(1)(f) and 38-61(1)(g), and the defendants emphasize that the statute requires that a misrepresentation must be made _in order to maintain a CUIPA claim. The defendants maintain that because the plaintiffs' deposition testimony indicated that the defendants never made any misrepresentation to the plaintiffs, the plaintiffs' CUIPA claim is not supported by the facts. They further contend that, in accordance with the holding in Mead v. Burns, 199 Conn. 651, 663-64,666 (1986), if a CUIPA claim fails, the plaintiffs will be unable to maintain their CUTPA claim. Thus, the defendants argue that they are entitled to summary judgment because the only "fact which will make a difference in the result of the case" is the fact to which the plaintiffs' officers have already testified, i.e., that the defendants made no misrepresentations.
The plaintiffs' complaint is brought pursuant to Conn. Gen. CT Page 4606 Stat. 38-61(1)(a), 38-61(1)(f), 38-61(1)(g) (CUIPA), and Conn. Gen. Stat. 42-110b (CUTPA).
Connecticut General Statutes 38-61(1)(a), 38-61(1)(f) and 38-61(1)(g) provides:
 Sec. 38-61. Unfair practices defined. The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
 (1) Misrepresentations and false advertising of insurance policies. Making, issuing or circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement, sales presentation, omission or comparison which: (a)Misrepresents the benefits, advantages, conditions or terms of any insurance policy . . . (f) is a misrepresentation for the purpose of inducing or tending to induce to the lapse, forfeiture, exchange, conversion or surrender of any insurance policy; (g) is a misrepresentation for the purpose of effecting a pledge or assignment or of effecting a loan against any insurance policy. . . .
Connecticut General Statutes 42-110b sets forth:
 Sec. 42-110b. Unfair trade practices prohibited. Legislative intent. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.
 (b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act ( 15 U.S.C. § 45(a)(1), as from time to time amended.
 (c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such CT Page 4607 regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.
 (d) It is the intention of the legislature that this chapter be remedial and be so construed.
The plaintiffs counter with the assertion that they have shown the existence of disputed factual issues concerning their CUTPA claim by presenting "substantial evidence of collusion" between a former employee of the plaintiffs and the defendants' agent. The plaintiffs argue that this collusion subjects the defendants to liability for fraudulent nondisclosure because their agent failed to fully and fairly disclose all material facts concerning the defendants' proposed sale of insurance to the plaintiffs. The plaintiffs emphasize that summary judgment is inappropriate when material issues concerning fraudulent concealment and misrepresentation exist, and that whether a certain practice violates CUTPA is an issue of fact.
The plaintiffs claim that the defendants falsely represented that the defendants policies were superior to other products proposed by a non-party insurance broker. Allegedly, the defendants further represented that these policies would most effectively meet the plaintiffs needs, and the plaintiffs purchased the policies in reliance upon the defendants' representations.
The defendants bolster their motion for summary judgment with testimony from the plaintiffs' officers indicating that no direct misrepresentations concerning the policies were ever made to the plaintiffs.
The plaintiffs support their opposition to the summary judgment motion with two affidavits. One affidavit, sworn to by one of the plaintiffs' officers, refutes earlier deposition testimony in which the officer stated that he had not had any conversations with the defendants concerning the economics of the insurance policies. In the supporting affidavit, this officer now swears that he did attend a meeting, also attended by the defendants' agent, during which the economics of the defendants' policies were touted by the agent's brother (an individual who at that time, was an employee of the plaintiff). The second affidavit, sworn to by the former attorney of the plaintiffs, states that he interviewed the defendants' agent and that the agent admitted that he was aware that the plaintiffs wished to convert their existing insurance policies to permanent insurance CT Page 4608 and that cost was of significant concern to the plaintiffs. The agent further acknowledged that he was aware that the plaintiffs were short of cash, and that the plaintiffs would have undergone considerably less expense if the defendants had sold convertible term insurance to the plaintiffs rather than the permanent policies that were actually sold.
In Batick v. Seymour, 186 Conn. 632, 646-47 (1982) the court emphasized that `[i]t is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.'" Id. at 646-67. But see Nolan v. Borkowski, 206 Conn. 495, 505 (1988) (court cautions that Batick does not hold that "a summary judgment may never be rendered in a case involving intent") (emphasis added).
"The intentional withholding of information for the purpose of inducing action has been regarded . . ., as equivalent to a fraudulent misrepresentation." Pacelli Bros. Transportation, Inc. v. Pacelli, 189 Conn. 401, 407 (1983). Further, fraudulent nondisclosure "involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak." Gelinas v. Gelinas, 10 Conn. App. 167, 173
(1987) (citation omitted). "A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment." Id. at 173.
In this case, when the plaintiffs pleadings and affidavits, and the inferences that can reasonably be drawn therefrom, are viewed in a light most favorable to the plaintiff, the material issue of whether the defendants engaged in fraudulent misrepresentations or fraudulent nondisclosure remains in dispute. Therefore, summary judgment is denied on the defendants' first ground.
The defendants move for summary judgment on the second ground that the plaintiffs' claims are barred by CUTPA's three-year statute of limitations. See Conn. Gen. Stat. 42-110g(f). They argue that this cause of action commenced on November 6, 1986, the date the plaintiffs served the defendants. The defendants maintain that, according to Fichera v. Mine Hill Corp., 207 Conn. 204,212 (1989), the date the alleged misrepresentations were made commences the running of the limitations period. They contend that the plaintiffs mistakenly believe that the statute of limitations period began with the November 7, 1983 issuance of the policies. The defendants argue that the date of the alleged misrepresentations, which allegedly occurred before the policy issuance date, actually commenced the running of the statute of CT Page 4609 limitations.
The plaintiffs maintain that, despite Conn. Gen. Stat. 42-110g(f), the Connecticut Supreme Court recognized in the Fichera case that when there is evidence of a fiduciary relationship, or when the defendant engages in later wrongful conduct, a continuing duty could be established that would toll the statute until the date the fraud was discovered. In the instant case, the fraud was allegedly discovered after the issuance of the policies. The plaintiffs argue that under certain circumstances, as in the instant case, an insurer has a fiduciary relationship to its insured. The plaintiffs further argue that the defendants engaged in further wrongful conduct as late as April 21, 1986, when they allegedly tried to "whitewash" the fraud of their agent.
The Connecticut Supreme Court has not specifically defined a fiduciary relationship, but has stated:
 Rather than attempt to define `a fiduciary relationship in precise detail and in such a manner to exclude new situations', we have chosen to leave `the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other.' Dunham v. Dunham, 204 Conn. 303, 320 (1987).
There is scant Connecticut case law addressing the issue of whether an insurance agent owes a fiduciary duty to an insured. However, the existent case law has noted that: "`because of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies, the relationship between the insurance agent and a client is often a fiduciary one.'" Winter v. Nationwide Mut. Ins. Co., 1 CTLR 438, 439 (July 2, 1990, Pickett, J. (quoting Katz v. Frank B. Hall Co., 3 CSCR 25 (October 30, 1987, Cioffi, J.)).
A well-known treatise on insurance law provides:
 [o]rdinarily, of course, an insurance agent assumes only those duties normaly found in an agency relationship, including the obligation to deal with his principal in good faith and to carry out instructions, and he assumes no duty to advise the insured merely by such relationship. However, where an agent also holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particularly where such needs have been CT Page 4610 brought to the agent's attention. And in so doing he may be held to a higher standard of care than that required of the ordinary agent since he is acting as a specialist.
16a Appleman, Insurance Law and Practice, 8836, at 64-66 (1981).
Connecticut case law has determined that whether an insurer and an insured have a fiduciary relationship is a question of fact. Alaimo v. Royer, 188 Conn. 36, 41 (1982). See also Winter v. Nationwide Mut. Ins. Co., 1 CTLR 438 (July 2, 1990, Pickett, J.) (determination of whether fiduciary relationship exists between insurer and insured is a question of fact not properly decided on a motion to strike); Katz v. Frank B. Hall Co.,3 CSCR 25 (October 30, 1987, Cioffi, J.) (whether or not insurance agent had a fiduciary relationship with the insured is an issue of fact.
It is not the function of the court to determine from the pleadings, the affidavits on file and depositions on file whether a fiduciary relationship exists but whether, from the record, the claimed evidence to be presented if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiffs. The plaintiffs have the same right to submit an unsettled claim or theory as they have to submit a firm or strong one. These plaintiffs are entitled to have a fact-finder pass upon the merits of their claims.
Allegations of the amended complaint (113) filed August 26, 1987 and in particular paragraphs 10 and 13 support the claim that since defendants were the plaintiffs' insurance provides, plaintiffs were entitled to plan their trust and confidence in defendants, and that defendants were obligated to less the utmost good faith, loyalty and honesty toward plaintiffs. The pleadings clearly suggest bad faith, disloyalty or dishonesty by defendant toward plaintiffs.
Connecticut General Statutes 42-110g(f) provides that "[a]n action under this section may not be brought more than three years after the occurrence of a violation of this chapter." Id., and the Connecticut Supreme Court has emphasized that CUTPA does not provide that the limitation period is delayed until the date the injury is discovered. Fichera, 207 Conn. at 212 (emphasis added). The plaintiffs must establish the existence of a continuing duty on the part of the defendants in order to toll the statute until the date the fraud was discovered.
In the instant case, the plaintiffs' affidavits set forth evidence that the defendants were made aware of the plaintiffs' particular insurance needs, and that placed their trust in the CT Page 4611 defendants and relied upon defendants' expertise in structuring this insurance deal.
It is apparent that the plaintiffs have offered sufficient evidence to raise an issue of material fact as to whether a fiduciary relationship existed between the parties so as to establish the existence of a continuing duty sufficient to toll the statute of limitations. Thus, it is concluded that summary judgment must be denied as to the defendants' second ground.
Finally, the defendants move that summary judgment should enter in favor of defendant Profesco Co. on the ground that Profesco falls outside the purview of CUIPA. The defendants argue that Profesco never engaged in offering, selling, or issuing life insurance. They maintain that Profesco was an entity engaged strictly in financial endeavors, and, therefore, summary judgment should issue in Profesco's favor because there are no genuine issues of material fact concerning CUIPA's inapplicability to Profesco.
The plaintiffs argue that Profesco should remain a party to this suit. They contend that Profesco had been a wholly-owned subsidiary of John Hancock, and it had been designed to provide financing for purchasers of John Hancock's policies. Thus, the plaintiffs maintain that Profesco was involved in the business of insurance. In their amended complaint the plaintiffs also alleged that Profesco was "an unregulated satellite corporation used by John Hancock and employed in such manner as to foster and permit the over selling of insurance and the sale of unnecessarily high priced insurance products through financing insurance premiums. "
Connecticut General Statutes 38-60 does not define the "business of insurance," but does provide in pertinent part:
 No person shall engage in this state in any trade practice which is defined in section 38 61 as, or determined pursuant to sections 38 62 and 38-63 to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. . . . When used in said sections, "person" means any individual, corporation, association, partnership, reciprocal exchange, interinsurer . . . and any other legal entity engaged in the business of insurance. . . . Id.
Based upon the plaintiffs' pleadings and evidence, a genuine issue of material fact remains as to whether Profesco's activities place it within the purview of CUIPA. CT Page 4612
The plaintiffs further contend that, regardless of CUIPA's scope, Profesco is an indispensable party to this action because it has an interest identical to that of John Hancock in the outcome of this suit.
An indispensable party has been characterized as one that has not only an "`interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final termination may be wholly inconsistent with equity and good conscience.'" Sturman v. Socha, 191 Conn. 1,6 (1983).
In their amended complaint the plaintiffs alleged that they entered into premium finance agreements with Profesco, whereby Profesco would pay John Hancock the premiums due on the plaintiffs' policies, and the plaintiffs were to repay Profesco for the principal and interest accrued on the premium payments. The plaintiffs' amended complaint includes several claims for relief. The second claim provides "[t]hat said policies of insurance and finance agreements be rescinded and declared to be null and void." By the very nature of this claim for relief, Profesco meets the definitional requirements of an "indispensable party."
It is concluded that genuine issues of material fact are apparent as to (l) whether the defendants engaged in fraudulent misrepresentation or concealment, (2) whether the parties had a fiduciary relationship that would establish the existence of a continuing duty that could toll the statute of limitations, and (3) whether defendant Profesco's activities come within the purview of CUIPA.
The motion for summary judgment is denied on all claims.
JOHN N. REYNOLDS. STATE TRIAL REFEREE