[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The plaintiff brought this action for legal malpractice by serving the defendant, her former attorney, with a complaint on July 27, 1992, which alleges negligence on his part while he was representing her in post-judgment negotiations between himself and her former husband's attorney, in that he advised her to enter into CT Page 11221-BB a stipulated modification of the original judgment dissolving her marriage which was filed with the court and approved on April 22, 1985. The defendant has moved for summary judgment on the ground that the action is barred by the three year limitation period imposed by General Statutes § 52-577 for all tort actions.
The underlying facts concerning the defendant's legal representation of the plaintiff in connection with the modification of the original divorce decree are substantially undisputed in the pleadings and in the documents and affidavits filed by the parties for the court's consideration in ruling on the motion for summary judgment. The orders entered at the time of the dissolution of the marriage on August 30, 1982, included a provision for the conveyance by the husband of his interest in the marital home to the wife in consideration of the funding by her of a trust fund for the benefit of the minor child upon the happening of certain stated contingencies, including the cohabitation or remarriage of the wife or the sale of the family residence.
On or about August 20, 1984, the plaintiff retained the defendant to file a contempt motion against her former husband because of his failure to make the payments due on the second j mortgage on the marital home as he was required to do under the terms of the dissolution judgment. After the court had ruled favorably on her motion the parties entered into negotiations to modify the terms of the original judgment.
The defendant advised the plaintiff that it would be in her best interest to delete from the judgment the provision that she fund the trust for the minor child, and that, in consideration of such a concession being made by her former husband, she should assume the second mortgage on the home, accept less by way of support payments and forgive any arrearages in his support and alimony payments. Thereafter, the defendant drafted a stipulation for the modification of the judgment that the plaintiff signed in reliance on the defendant's advice that she would no longer be obligated to fund the trust as she had been under the terms of the original judgment, and the stipulation, which was dated April 8, 1985 and signed by both parties, was approved by the court on April 22, 1985.
The defendant asserts in his affidavit in support of the motion that on September 11, 1985, he transmitted to the plaintiff the recorded quit claim deed of her former husband's one-half interest in the jointly-owned residence as well as the stipulated CT Page 11221-CC modification of judgment and asked her to contact him if she had any questions about them. He also states that his representation of the plaintiff terminated upon the transmittal of the relevant documents to her and that he "never represented Ms. Sanborn on any matter after 1985."
The stipulated modification of judgment (Defendant's Exhibit A) which has been submitted by the defendant in support of his motion purports to modify the paragraph of the judgment which contained the provision for funding the trust, but does so only to the extent that it requires the husband to quitclaim his interest in the jointly owned residence subject to the existing first and second mortgages which the wife agrees to assume and pay and also waives any claim on her part for arrearages in payment on the second mortgage. It does not, however, expressly state that the wife was to be relieved of the obligation to fund the trust and goes on to state that the original judgment of the court is to remain the same "[i]n all other respects."
The plaintiff states in her affidavit in opposition to the motion that "[i]n December, 1989, I learned that my ex-husband expected me to fund the trust [and] I then retained a new attorney, Cynthia Houck, to represent me in this matter." (Plaintiff's Exhibit A, paras. 9 and 10). She also states that Houck told her that she had consulted with "my former attorney", the defendant, and that he had told Houck that the plaintiff "was under no legal obligation to fund the trust, based on the Stipulated Modification of Judgment which he drafted for me in 1985." Id. para. 12.
The plaintiff goes on to assert in her affidavit (paras. 13 and 14) that on June 25, 1990, the defendant, when called as a witness at a hearing held on a motion for contempt filed by her former husband to order her to fund the trust for the child, "attempted to testify, in Superior Court, that the intent, in part, of the Stipulated Modification of Judgment was to void my obligation to fund the trust." She concludes by stating that contrary to the defendant's "representations to me, the Superior Court for the Judicial District of Tolland at Rockville, on June 25, 1990, ruled that I was obligated to fund the trust . . .", and that thereafter she commenced the present action "less than three years after Charles Greenwald advised me that I owed no legal obligation to fund the trust," Id. paras. 16 and 17.
The affidavit of Cynthia Houck which was filed in opposition to the motion states that she represented the plaintiff from CT Page 11221-DD December 1989 through June of 1990 in the contempt proceeding brought by her former husband, and that the plaintiff told her when she was first retained "that it was her understanding that she was not obligated to fund the trust" because the stipulated modification of judgment drafted by the defendant in 1985, "was intended, in part, to eliminate her obligation to fund the trust." Plaintiff's Exhibit B, paras. 3 and 6. She also states in her affidavit that on December 27, 1989, April 25, 1990 and June 25, 1990, the defendant "advised me that according to his interpretation of the Stipulated Modification of Judgment . . . Ms. Sanborn was not required to fund the trust [and that she] communicated Mr. Greenwald's advice and representations to my client, Ms. Sanborn." Id. paras. 8 and 9.
The plaintiff has also filed a transcript of the proceedings held on June 25, 1990 (Plaintiff's Exhibit C) in which the court (Jackaway, J.) ordered the plaintiff to fund the trust. The basis of the ruling as stated by the court was "[b]ecause the stipulation was very poorly drafted [and] if they had intended that the obligation to create the trust should be taken out of that paragraph, it should have said so, but it doesn't [and] that's the problem." Id. p. 9.
Paragraph 14 of the plaintiff's amended complaint alleges that the defendant "negligently failed to prepare a modification that I was legally sufficient to express the agreement of the parties", and paragraph 15 alleges that the defendant "negligently failed to warn and advise the plaintiff concerning the legal consequences of the modification he prepared, which failure to warn and advise continued until August 3, 1990, when the court ruled." The defendant's third special defense, which is denied by the plaintiff in her reply, alleges that the defendant's representation of the plaintiff terminated "on or about August 20, 1984", and that the plaintiff's action is barred by § 52-577 of the General Statutes which provides that "[n]o action founded upon a tort shall be brought but within three years from the act or omission complained of."
In the course of his oral argument in opposition to the defendant's motion for summary judgment, counsel for the plaintiff acknowledged (Transcript, January 18, 1994, pp. 2-3) that the attorney — client relationship between the parties was terminated "no later than 1985", and stated that he was not claiming that the statute of limitations was tolled, or that the accrual of the plaintiff's cause of action was deferred, under the "continuing CT Page 11221-EE representation rule" which has been defined by our Appellate Court as being applicable only `while the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts.' S.M.S. TextileMills, Inc. v. Brown, Jacobson, Tillinghast, Lahan King, P.C.,32 Conn. App. 786 at 791 (quoting Wall v. Lewis, 393 N.W.2d 758, 762
(N.D. 1986)). He argues nevertheless that under the Supreme Court's decision in Fichera v. Mine Hill Corporation, 207 Conn. 204, proof of the allegation in his complaint that the defendant "negligently failed to warn and advise" the plaintiff in 1989 and 1990 of the "legal consequences" of the stipulation that he had drafted in 1985 would constitute "later wrongful conduct of a defendant related to the prior act" which was stated in Fichera to be sufficient to support a finding of a "continuing course of conduct" that would toll the applicable statute of limitations. Id. 208, 209.
Where the complaint in an action for legal malpractice against an attorney alleges negligence in his representation of the plaintiff, the three year limitation period imposed by § 52-577 of the General Statutes for tort actions is the applicable statute of limitations. Shuster v. Buckley, 5 Conn. App. 473, 477. The time period within which a plaintiff must commence such an action "begins to run at the moment the act or omission complained of occurs" because § 52-577 is a so-called "occurrence statute."S.M.S. Textile Mills, Inc., supra. 32 Conn. App. 786, 790.
The trial court may properly grant summary judgment where there is no dispute as to the applicable statute of limitations and there is no genuine issue of material fact concerning the date of the wrongful conduct alleged in the complaint. Shuster v. Buckley, supra, 478. Where the plaintiff's complaint and the documentation she offers in opposition to the motion fail to state facts giving rise to a continuing duty on the part of the defendant which would serve to impede or avoid the normal application of the particular limitations period, the court may properly render a summary judgment for the defendant because the issue must be one which the plaintiff is entitled to litigate under her pleadings. Id. 477.
The wrongful conduct alleged by the plaintiff in her complaint was the defendant's negligent failure to draft the stipulation so was "to express the agreement of the parties", (Complaint, para. 14), and it is undisputed both factually, and as a matter of law in view of Judge Jackaway's subsequent ruling, that "the agreement itself could not have been changed" or otherwise rectified after CT Page 11221-FF its approval by the court on April 22, 1985, as plaintiff's counsel conceded (Transcript, supra, 4) in the course of his oral argument. See McClain v. Johnson, 288 S.E.2d 9 (Ga.App. 1981). Accordingly, the plaintiff's cause of action is barred by the statute unless her claims under paragraph 15 of the complaint that the defendant's negligent failure, after she had retained another attorney in December of 1989, "to warn and advise [her] concerning the legal consequences of the modification he prepared", reasonably supports an inference of a continuing breach of duty by the defendant. See Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 13.
The continuing course of conduct doctrine as articulated by the Supreme Court in Fichera v. Mine Hill Corporation, supra,207 Conn. 209-10, and the continuing course of treatment doctrine in the medical malpractice context "share similar supporting rationales." Blanchette v. Barrett, 229 Conn. 256, 276. The policy underlying the continuing course of conduct doctrine is "that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." Id.
Similarly, the rationale given by the courts that have applied the continuing course of conduct doctrine to legal malpractice cases by adopting the continuous representation rule is that the rule gives an attorney the opportunity to remedy his error or to establish that no error was made during the time that "the attorney continues to represent the client and the representation relates to the same transaction or subject matter as the allegedly negligent acts." Wall v. Lewis, 393 N.W.2d 758, 762-63 (N.D. 1986). Although the continuous representation rule discussed in TextileMills, supra, 32 Conn. App. 786, was not expressly adopted by the Appellate Court in that case, the Supreme Court implicitly accepted and followed the rationale for the rule in Robbins v. McGuinness,178 Conn. 258, 261-62, when it held that an attorney has no continuing duty to his former client where the error can no longer be corrected and his representation in the matter has terminated.
The requirement that there must be evidence of a subsequent breach of duty in order to support a finding of a continuing course of conduct is not satisfied by the failure of the alleged tortfeasor to notify the plaintiff of his wrongdoing. Connell v.Colwell, 214 Conn. 242, 254-55. A continuing duty to warn exists only in the context of products liability litigation, and even in a medical malpractice case where the patient continues to be under CT Page 11221-GG his care, a physician who has negligently diagnosed a patient's condition does not have a continuing duty to correct that diagnosis "in the absence of proof that he subsequently learned that the diagnosis was incorrect." Blanchette v. Barrett, supra,229 Conn. 256, 284.
A former client's contact with her attorney to seek help to rectify an error previously made cannot revive a cause of action after the statute of limitations has already run. Schoenrock v.Tappe, 419 N.W.2d 197, 201 (S.D. 1988). Moreover, mere statements by her former attorney, after she had retained another attorney to represent her in the same matter, that the documents he had prepared were legally sufficient does not serve to toll the statute of limitations for filing a legal malpractice action. Riddle v.Driebe, 265 S.E.2d 92, 95 (Ga.App. 1980) For the foregoing reasons, the court finds that the plaintiff's cause of action is barred by the statute of limitations because "the act or omission complained of" occurred no later than April 22, 1985 and that the plaintiff's complaint and the documentation furnished in opposition to the motion fail to set forth circumstances which would serve to avoid or impede the normal application of the three year limitation period. Bartha v.Waterbury House Wrecking Co., 190 Conn. 8, 13-14. Accordingly, summary judgment may be entered because the pleadings and other proof submitted show that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law pursuant to Practice Book § 384.