[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
New Haven Savings Bank ("NHSB"), the plaintiff/defendant on the counterclaim, was a holder of a construction mortgage on property owned by the defendant Common Construction Co., Inc. The construction mortgage was given to provide funds for the development of a condominium complex. The defendant/plaintiff on the counterclaim, Country Lumber, Inc., provided lumber and building materials to Common Construction for the development on the property. Country Lumber was not paid and, therefore, filed a mechanics lien on the property.
Common Construction defaulted on its obligations under the construction mortgage and NHSB instituted the present foreclosure action, naming, among others, Country Lumber as a defendant by virtue of its mechanics lien. NHSB substituted a bond for the mechanics lien and obtained a judgment of strict foreclosure with respect to the property.
On September 17, 1992, Country Lumber filed counterclaims against NHSB, alleging that an advance made on August 10, 1988 pursuant to the mortgage was not for funding construction, but for the purchase of the land, in violation of General Statutes CT Page 6682 § 36-99(11) (Rev. to January 1, 1995). Country Lumber also alleges that NHSB made advances to Common Construction after Common Construction defaulted on June 15, 1989, to the detriment of Country Lumber; that NHSB made the final advance to Common Construction, although construction was not completed, in violation of General Statutes § 36-99; and that NHSB made advances to Common Construction after NHSB was notified on September 15, 1989 that Country Lumber was not being paid for materials supplied for the project. The basis of the counterclaim is that the above-noted conduct on the part of NHSB constituted a violation of the Connecticut Unfair Trade Practices Act, ("CUTPA"), General Statutes § 42-110b.
The NHSB filed a general denial to the counterclaim, and asserted by way of its first special defense that the counterclaim is barred by the statute of limitations contained in General Statutes § 42-110g(f). NHSB filed the present motion for summary judgment on the basis of the statute of limitations defense.
 Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.
(Citations omitted; internal quotation marks omitted.) Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 105-06, (1994). The trial court may properly grant summary judgment for a defendant when the documents and other evidence submitted in support of summary judgment indicate that the party failed to file his or her cause of action within the period required by the applicable CT Page 6683 statute of limitations. Daily v. New Britain Machine Company,200 Conn. 562, 565-70 (1986). "Where there is no dispute as to the applicable statute of limitations, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." Shusted v. Buckley, 5 Conn. App. 473,477 (1985).
In support of its motion for summary judgment, NHSB submitted the affidavit of Richard Johnson, a vice president with NHSB. Mr. Johnson avers on the basis of personal knowledge that the last advance pursuant to the terms of the construction mortgage was made by NHSB on July 13, 1989. As NHSB notes, County [Country] Lumber's counterclaim was not brought until September 25, 1992, more than three years after the date of the last advance by NHSB. Accordingly, NHSB argues that the counterclaim is barred by the three year statute of limitations imposed on CUTPA claims by operation of General Statutes § 42-110g(f).
General Statutes § 42-110g(f) provides that "[a]n action under [section 42-110g] may not be brought more than three years after the occurrence of a violation of this chapter." This statute has been construed to mean that the three year period begins running with the occurrence of the violation regardless of the date of the discovery of that violation. Fichera v. MineHill Corp., 207 Conn. 204, 209 (1988); see also Lees v.Middlesex Ins. Co., 219 Conn. 644, 653, (1991).
Country Lumber argues that the actual violation of CUTPA in the present case was the plaintiff's initiation of the foreclosure action following the NHSB failure to properly advance funds in accordance with the terms of the construction mortgage. The foreclosure action was initiated in February of 1991, less than three years before Country Lumber filed its counterclaim. Therefore, if the date of the initiation of the foreclosure action constitutes the CUTPA violation, Country Lumber has complied with the requirements of General Statutes § 42-110g(f). Country Lumber argues that the NHSB's dealings with Common Construction over the course of the construction mortgage, culminating in the bringing of the foreclosure, constitutes a continuing course of conduct, which, Country Lumber argues, tolls the running of the statute of limitations until the initiation of the foreclosure complaint.
"To support a finding of a `continuing course of conduct' CT Page 6684 that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong." Fichera v.Mine Hill Corp., supra, 207 Conn. 209. "Where [the court has] upheld a finding that a duty continued to exist after the cessation of the `act or omission' relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Id., 210.
Country Lumber argues that NHSB owed a duty to the defendant to comply with the terms of the mortgage, and that this duty continued until the initiation of the foreclosure complaint. The duty that Country Lumber is relying on is the duty to advance funds in accordance with the terms of the mortgage. That duty, however, was violated at the time of the improper advancement. Country Lumber failed to cite any authority for the proposition that NHSB had a continuing duty to disclose after it breached the terms of the construction mortgage. Nevertheless, the short answer to this argument is that County [Country] Lumber's counterclaim does allege that NHSB's initiation of the foreclosure action was in itself a violation of CUTPA, but rather the counterclaim relies on NHSB's failure to abide by the terms of the mortgage as the basis of the violations. Cf. Fichera v. Mine Hill Corp., supra, 207 Conn. 213
(letter from seller's agent indicating that seller's prior statements were misrepresentations — mailed more than two years after the sale of property — was not mentioned in the complaint as a misrepresentation and was not a basis for a continuing course of conduct tolling the statute of limitations).
Although Country Lumber asserts that it was unable to learn of the improper advancements until soon after the initiation of the foreclosure action, as noted by the supreme court in Ficherav. Mine Hill Corp., supra, 207 Conn. 212, the commencement of the limitations period in General Statutes § 42-110g(f) is not conditioned upon the discovery of the violation. As the court noted
 [u]nlike the statutes of limitation of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the CT Page 6685 deceptive practice for commencing suit . . . § 42-110g(f) provides only that an action must be brought within three years "after the occurrence of a violation of this chapter." In construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years "from the date of the act or omission complained of," we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . We have reached a similar conclusion in respect to the use of "act or omission complained of" in our personal injury statute of limitations, General Statutes § 52-584, prior to its amendment in 1969 to provide an alternative date for commencement of the limitation period, "two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." Public Acts 1969, No. 401, 2. We have held, prior to the amendment, that even where the wrongful act could not reasonably have been discovered until after the statute had run, any action seeking damages for such an "act or omission" was barred.
(Additional citations omitted.) Id., 212-13. Accordingly, the statute of limitations under General Statutes § 42-110g(f) began to run on the date of the alleged violation of the CUTPA, which could have been no later that July 13, 1989, the date of the last advancement under the loan.
Country Lumber also opposes summary judgment on the ground that NHSB fraudulently concealed the CUTPA violations, thus tolling the statute of limitations under General Statutes § 52-595.
 Under our case law, to prove fraudulent concealment, the plaintiffs were required to show: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs' cause of action; (2) that defendant's intentional concealment of these facts from the plaintiffs; and (3) that defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs' part in filing a complaint on their cause CT Page 6686 of action.
(Citations omitted.) Bartone v. Robert L. Day Co., 232 Conn. 527,533 (1995). However, counsel for Country Lumber conceded that it could not prove any fraud for the purposes of General Statutes § 52-595. In addition, in Fichera v. Mine Hill Corp.,
supra, 204 Conn. 215-17, the court held that the statute of limitations under General Statutes § 42-110g(f) could not be avoided by proof of a fraudulent concealment under General Statutes § 52-595. The court held that the application of the General Statutes § 52-595 to a CUTPA claim
 would defeat the legislative intention expressed in § 42-110g(f) to bar actions for CUTPA violations after the lapse of more than three years from their occurrence. Since CUTPA violations are defined in General Statutes § 42-110b to include "deceptive acts or practices in the conduct of any trade or commerce," it is evident that the legislature intended that the perpetrators of such fraudulent practices, as well as other CUTPA violators, should be permitted to avail themselves of the statute of limitations defense provided by 42-110g(f).
Id., 216; see also Bartone v. Robert L. Day Co., supra,232 Conn. 532 n. 4.
Clearly Country Lumber has failed to demonstrate the existence of any genuine issue of material fact with respect to General Statutes §§ 52-595, and NHSB has demonstrated that no genuine issue of material fact exists with respect to the allegations of the special defense relying on General Statutes § 42-110g(f). Accordingly, NHSB is entitled to judgment as a matter of law. Therefore, NHSB's motion for summary judgment is granted.
WEST, J.