[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (No. 152)
This motion for summary judgment is the second such motion in this case to come before me. On February 3, 1998, I granted a motion for summary judgment (no. 134) filed by the defendant M. H. Chodos Insurance Agency on statute of limitations grounds.Grant v. City of New Haven, 21 Conn. L. Rptr. No. 10, 340 (April 20, 1998) (the "Chodos decision"). Familiarity with the Chodos
decision is assumed. The present motion for summary judgment is pursued by two other defendants: Nicholas Pastore ("Pastore"), the Police Chief of the City of New Haven at the time of the events in question, and the City of New Haven (the "City") itself. This motion presents questions, which turn out to be CT Page 9146 intertwined, concerning both the running of the statute of limitations and the question of whether Pastore violated any duty owed to the plaintiff, Tyrone Grant ("Grant"), in the first place. For the reasons set forth below, the motion must be granted.
As the Chodos decision describes, Grant was injured by an employee of Fountain's Garage ("Fountain's") on June 22, 1992, while attempting to reclaim a car that Fountain's had towed pursuant to a contract with the City. Grant subsequently obtained a substantial judgment against Fountain's. On May 12, 1995, however, Fountain's insurer denied coverage for the incident in question for a variety of reasons, including its assertion that Grant's injury was caused by an intentional act.
Grant commenced the present action on December 12, 1995 by service of process against several defendants, including Pastore and the City. His amended complaint of July 3, 1998, contains two counts that are relevant to the motion now before me. The first count, directed against Pastore, alleges that Pastore "was negligent in failing to require Fountain's to obtain appropriate insurance coverage." The second count., directed against the City, seeks indemnification pursuant to Conn. Gen. Stat. §7-465. Grant alleges no independent breach of duty by the City. Because the viability of the second count necessarily turns on the viability of the first, only the first count need be discussed here.
On March 20, 1998, Pastore and the City filed the motion for summary judgment now before me. The motion claims both the
running of the statute of limitations and the absence of any duty owed by Pastore to Grant. The motion was heard on July 13, 1998.
Grant's first problem is a problem of substantive law. The gravamen of the first count of Grant's complaint is that Pastore negligently failed to enforce New Haven Ordinances § 29-109. That ordinance provides, in pertinent part, that, "No license shall be issue to an applicant [for a towing license] until he shall have deposited with the chief of police. . .(b). . .[a] garage liability policy, covering the operation of applicant's business, equipment, or vehicles, for any bodily injury or property damage. This policy shall be in an amount acceptable to the board of police commissioners." CT Page 9147
As described in the Chodos decision, Fountain's was covered by a policy with Progressive Casualty Insurance Co. The problem,.from Grant's point of view, is that the Progressive policy had certain exclusions, including an exclusion for intentional acts. (The actual policy, which is not itself in evidence, may have had other exclusions as well, but since the exclusion for intentional acts was sufficient to deny coverage for Grant's injuries, the possibility of other exclusions need not be discussed.) In Grant's view, these exclusions were inconsistent with the requirement of § 29-109 (b) that a garage liability policy cover "the operation of applicant's business. . . for any bodily injury." But although Grant's plight necessarily arouses sympathy, his legal position is unpersuasive.
Grant's difficulty is that the ordinance in question, properly construed, has not been violated. His contention, as mentioned, is that the intentional act exclusion in Fountain's policy is inconsistent with the ordinance's requirement that a garage liability policy cover "any bodily injury " This argument, however, overlooks both the context of the cited phrase and the requirements of public policy. The ordinance requires "[a] garage liability policy, covering the operation of applicant'sbusiness. . . for any bodily injury." (Emphasis added.) The term "business" is an important limitation of the requirements of the ordinance. The construction of this ordinance is an issue of law.
The "business" of a licensed tower is the towing and storage of automobiles. It is not the beating of its customers. The ordinance does not, even facially, require liability insurance for intentional assaults. This construction is fatal to Grant's case, because he was injured by a brutal assault rather than by
the towing or storage of his car.
Although this construction of the term "business" is necessarily detrimental to the interests of innocent victims of violent assaults, it is required by an important consideration of public policy. "As a general rule, one cannot insure himself against the consequences of his wilful acts, committed with the intent to inflict injury." 6B John Alan Appleman Jean Appleman,Insurance Law and Practice § 4252 at 7 (1979) ("Appleman"). No person in our society, however well insured, can expect his insurance policy to pay for the consequences of an intentional beating. Yount v. Maisano, 627 So.2d 148, 153 (La. 1993). This policy is necessary in a society governed by the rule of law. CT Page 9148 "Otherwise, a liability policy, could be used as a license to wreak havoc at will." Tennessee Farmers Mutual Insurance Co. v.Evans, 814 S.W.2d 49, 54 (Tenn. 1991). As Appleman explains, all liability insurance policies have an exclusion for intentional acts. "The intentional exclusion is necessary to the insurer to enable it to set rates and supply coverage only if losses under policies are uncertain from the standpoint of any single policyholder, and if a single insured is allowed through intentional or reckless acts to consciously control risks covered by policy, the central concept of insurance is violated." 7A Appleman, supra, § 4492.01 at 21.
For this reason, the ordinance in question must be construed so as not to require liability insurance for intentional acts. Although this construction necessarily denies victims of intentional assaults a potential source of compensation for their injuries, it does so by placing both moral and economic liability on the persons responsible for those assaults. At the end of the day, it is this latter consideration that must prevail. The ordinance, thus construed, has not been violated, and Grant's case must necessarily fail.
In addition to this substantive barrier, Grant faces an insuperable problem of timing. Assuming, for purposes of argument, that the foregoing analysis is in error and that a violation of the ordinance did, in fact, occur, that violation occurred in April of 1992, when Fountain's license was issued. (Although the exact date of the licensing is not in evidence, the arguments of the parties make it clear that this event occurred in about April of 1992. It is undisputed that Fountain's policy was issued on April 24, 1992. Grant's amended complaint alleges that the licensing occurred "[o]n or before June 22, 1992." On any construction, this crucial event occurred well before December of 1992.) This action, as mentioned, was commenced on December 12, 1995.
Conn. Gen. Stat. § 52-584 provides that, "No action to recover damages for injury to the person, or to real or personal property, caused by negligence. . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of" This is the applicable statute of limitations for purposes of the motion now before me, since the first count of Grant's CT Page 9149 complaint sounds in negligence and the injury complained of which, as the Chodos decision explains, is an injury to Grant's financial interests caused by underinsurance -is an injury to "personal property" in the broad sense that that term has acquired in the law. See 63C Am.Jur.2d Property § 18 (1997).
"[A] lawsuit commenced more than three years from the date of the negligent act or omission complained of is barred by the statute of limitations, § 52-584, regardless of whether the plaintiff had not or, in the exercise of care, could not reasonably have discovered the nature of the injuries within that time period." Blanchette v. Barrett, 229 Conn. 256, 265,640 A.2d 74 (1994). With this doctrine in mind, it is crucial to identify the negligent act or omission complained of. To the extent that the negligent conduct complained of in this case occurred prior to December 1992 (the exact date is unimportant for present purposes), the first count of Grant's complaint is barred by the statute of limitations.
In this case, the principal conduct complained of — i.e. the issuance of a license to Fountain's — plainly occurred prior to December 1992. Grant, recognizing this difficulty, contends that the statute of limitations is tolled by the continuing course of conduct doctrine. As our Supreme Court has explained, however:
 To support a finding of a "continuing course of conduct" that may toll the statute of limitations there must be evidence of the breach of duty that remained in existence after commission of the original wrong related thereto. Tat duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . .
 Where we have upheld a finding that a duty continued to exist after the cessation of the "act or omission" relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.
Fichera v. Minc Hill Corp. , 207 Conn. 204, 209-10, 541 A.2d 472
(1988). Accord Blanchette v. Barrett, supra, 229 Conn. at 275.
In this case neither of the alternative Fichera requirements for the application of the continuing course of conduct doctrine CT Page 9150 has been satisfied. There is plainly no "special relationship," such as a physician-patient or lawyer-client relationship, between Pastore and Grant giving rise to a continuing duty toward Grant on Pastore's part. There is also no evidence of some later "wrongful conduct" on Pastore's part, assuming, for purposes of argument, that the initial issuance of a license to Fountain's was wrongful.
The question of how, if at all, Pastore's conduct following the issuance of Fountain's license could be termed wrongful conduct was much mooted during argument. Grant contends, as he must, that, following the issuance of a license that he views as wrongful, Pastore had a duty to subsequently revisit the situation and demand that Fountain's acquire additional liability insurance retroactive to June 22, 1992. Grant further contends, as again he must, that this duty continued at least until December 1992. But from whence does this duty arise? After considerable argument, Grant conceded that this duty, if it exists, does not come from the ordinance. The ordinance imposes no retroactive obligations on the chief of police. Grant argued instead that the duty was a duty of care required by the common law. Suffice it to say, however, that there is no authority suggesting the existence of a common law duty of care requiring public officials to command private parties to obtain retroactive insurance. To recognize the existence of such a duty on the part of public officials would expand their liability enormously with no compelling policy justification. There is simply no evidence of a wrongful act on Pastore's part following the issuance of the license in question.
For the reasons stated above, Grant's action against Pastore and the City is both devoid of substantive merit and precluded by the statute of limitations. The motion for summary judgment is granted.
Jon C. Blue Judge of the Superior Court