[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ONLY
CT Page 5251 DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON FIRST COUNT
The defendant has filed a motion for summary judgment, based on a claim that the statute of limitations bars recovery under the first count. This count alleges the breach of a five year lease the lease was executed in 1979 and its term ran to 1985. The court will first discuss the claims made in the first count.
The first count states the defendant company, during the period 1979 to 1985, improperly used, stored, disposed or discharged hazardous waste as defined in § 22a-115(1) of the general statutes on to the leased property. The plaintiff owner of the property has had to remediate the property by attempting to remove contaminated material and continues to report to various local, state and governmental agencies.
The first count in paragraph 7 goes on to allege that the defendant's disposal of the waste material and failure to remediate its effects violated and continue to violate § 22a-114
et seq. § 22a-422 et seq of the state statutes and Chapter 26 of Title 33 of the United States Code. It is further claimed that the defendant's conduct "was and continues to be a breach of the obligations off defendant under said lease", par. 8. As a result the plaintiff has and will continue to incur costs for investigating the effects of such hazardous waste and clean up costs associated with its presence on the property; also the value of the plaintiff's land will be diminished as well as its use.
The language of the lease which the plaintiff claims the defendant violated is the twelfth paragraph which states in relevant part:
 "Twelfth. The tenant agrees to observe and comply with all laws, ordinances, rules and regulations of the federal, state, county and municipal authorities applicable to the business to be conducted by the tenant in the demised premises . . ."
The defendant's motion for summary judgment argues that the claim is barred by the six year statute of limitations applicable CT Page 5252 to actions for breach of a written lease, § 52-776(a). That statute says actions on written contracts "shall be brought . . . within six years after the right of action accrues." As the defendant notes such an action has been held to accrue "at the time of the breach of contract occurs, that is when the injury has been inflicted," Becken-Stein v. Potter and Carrier Inc.,191 Conn. 150, 156 (1983).
In this case the plaintiff alleges that hazardous waste was deposited on the property between 1979 and 1985 thus, argues the defendant, any cause of action for breach of the lease accrued in 1985 and expired in 1991. But suit was not brought until September 1997, over six years too late maintains the defendant.
The defendant cites several cases to counter any argument by the plaintiff that the defendant's alleged conduct which ended in 1985 continues to breach the terms of the lease. It refers to language in Fichera v. Mine Hill Corp., 207 Conn. 204, 209
(1988) to the effect that: "To support a finding of a `continuing course of conduct' that may toll the statute of limitations there must be evidence of a breach of duty that remained in existence after commission of the original wrong related thereto."
The defendant points out that any duty owed by the defendant to the plaintiff terminated with the expiration of the lease. Thus in Bartha v. Waterbury House Wrecking Co., 190 Conn. 8,13-14 (1983), the court affirmed the granting of a summary judgment motion based on failure to comply with the three year tort statute of limitations. There the defendant contractor left a hazardous condition on the worksite after having completed work under the contract. The court held that the contractor had no "continuing duty to warn of the danger or to safeguard" the condition since the contract was completed, id at page 118. The defendant also cites Sanborn v. Greenwald, 39 Conn. App. 289
(1995).
In Sanborn, summary judgment in the defendant's behalf was upheld where the plaintiff sued beyond the three year statute of limitations period. The defendant attorney negligently drafted a document in 1985 and the plaintiff was injured in 1990. The defendant quotes from page 297 of the court's decision: "The defendant here did not engage in any affirmative conduct initiated by him after 1985, made no promise after (completing his contractual obligations) that he would do something else in the future, had no fiduciary or contractual relationship with the CT Page 5253 plaintiff (after 1985), and committed no fraud". The defendant argues that, in this case, similarly, it could not be held to have owed the plaintiff any duty after the lease expired in 1985 and thus could not be liable for any breach of the lease more than six years after that date, id. P. 297.
The plaintiff opposes the motion for summary judgment. It concedes that the applicable statute of limitations is six years pursuant to § 52-776(a), that suit was not brought until September 1997, the lease ended in 1985 and the dumping of hazardous waste by the defendant occurred during the term of the lease and not after 1985.
But relying on the twelfth paragraph of the lease wherein the defendant agreed to observe and comply with local, state and federal laws the plaintiff claims by dumping the waste and failing to remediate the polluted condition caused thereby, the defendant violated state and federal statutes and continues to violate the terms of the lease. The plaintiff notes that inFichera, Bartha and Sanborn the duty involved in each of those cases was found not to be continuing. Here, on the contrary "it is not only the dumping of hazardous wastes that violated the federal and state environmental statutes set forth in paragraph 7 of the complaint, but the maintenance of the polluted condition and failure to remediate same, which failure continues to this day, and therefore constitutes a continuing breach of the promise under the lease to comply with all federal and state laws," (plaintiff's memo of 4/1/99). The plaintiff focuses on the Water Pollution Control Act, §§ 22a-416 et seq and argues that the state and federal environmental authorities can take action against both the land owner and the polluter for any environmental pollution. Starr v. Commission on Environmental Protection,226 Conn. 358 (1993) is cited for the proposition that §§ 22-416 et seq give the commissioner broad powers to hold liable the owner of property and the polluter "years after the creation of the condition (of pollution) for such "maintenance" of the condition — that is maintenance of the condition of pollution on the property.
Section 22a-432 gives the commissioner power to issue a cleanup order to a person who has established a facility or created a condition . . . or is maintaining any faculty or condition which reasonably can be expected to create a source of pollution to the waters of the state. CT Page 5254
The bare statutory language seems to warrant the broad reading given to it by the plaintiff and in dicta the Starr court did say that by amendment ". . . § 22a-432 was expanded to reach not only landowners who were merely passively maintaining a nuisance but also those persons who had actively created or established a source of pollution." Id. at page 386.[1]
The question that must be decided then is: given the language of paragraph 12 of the lease which required the defendant to comply with all state and federal laws during the terms of the lease, does the failure to so comply with the environmental laws create a continuing duty under the lease to the plaintiff so as to preserve its contract claim which would otherwise be barred by a six year statute of limitations?
First, it should be noted that this is not a case where there would be a conflict with statutory public policy objectives if the lease and particularly paragraph 12 is read not to create a continuing duty to the plaintiff to comply with state or federal environmental law so as to prevent the expiration of the limitations statute; or to put it another way, the contract need not be interpreted as the plaintiff suggests to avoid a conflict with public policy, cf. Williams v. Vista Vedra. Inc.,178 Conn. 295, 297 (1979); Rupert's Oil Service v. Leshe,40 Conn. Sup. 295, 297 (1985). That is, the ability of state or federal authorities to protect and order the clean up of the environment under the statutory scheme is not affected by how this court interprets paragraph 12 of this lease with regard to the statute of limitations.
That, I suppose, is the problem presented by the plaintiff's rather novel argument. Any "continuing obligation" on the defendant created by the state or federal environmental laws runs to governmental authorities not to the plaintiff lessor.[2]
Basically, the plaintiff's argument is a bootstrap or conclusory position that attempts to turn this obligation to comply with state and federal statutes, which is owed to governmental entities, into a continuing duty running to the plaintiff. If the defendant has a continuing obligation to comply with environmental statutes, that does not mean the defendant has the same continuing obligation to the plaintiff so as to insulate the plaintiff from statute of limitations defenses by a private litigant such as the defendant.
Whenever the continuing duty doctrine has been applied to CT Page 5255 extend the limitations period, the duty must be found to have run to the party claiming the injury.
 "Where we have upheld a finding that a duty continued to exist after the cessation of the "act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Fichera v. Mine Hill Corp., 207 Conn. 204, 209-210 (1988), quoted in Blanchette v. Barrett, 229 Conn. 256, 275 (1994) (emphasis added).
The rationale behind the continuing course of conduct doctrine was stated in Blanchette v. Barrett at 229 Conn. page 27: "The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedial." That is not what is involved here. There is no claim of a special relationship between these parties or that after the term of the lease the defendant engaged in wrongful conduct related to wrongful acts committed during the term of the lease.
The duty created by state and federal environmental laws is a duty not to pollute. During the term of the lease it could be argued the defendant had a duty to the lessor not to pollute in violation of those laws. But the continuing statutory obligation the defendant may have as a result of pollution it may have caused during the lease runs only to the state or federal government.
There is no basis or need here to apply the continuing duty doctrine to enforce any environmental policy and to do so would gratuitously deprive the defendant of its rights under the ordinary operation of the statute of limitations which also reflects important policy considerations.
Furthermore, this issue can be approached from a different perspective — ordinary principles of contract interpretation. When the defendant in paragraph 12 agreed to comply with state and federal law it could be said it agreed not to pollute in terms defined by applicable federal and state environmental statutes. But how can it be said that the parties here agreed that the defendant would thereby assume a continuing obligation to the plaintiff to reimburse the latter for clean up costs since CT Page 5256 whether there would be such costs at some indefinite date in the future and the entity on whom they would be imposed under statute — the plaintiff owner or the defendant by the plaintiff's own argument would be determined at the discretion of a third party to wit the state or federal government? The obligations created by paragraph 12 of this lease cannot be fairly interpreted in this way. Even beyond that, the language of paragraph 12 of this lease which imposed an obligation to comply with state and federal law must be interpreted in the context of applicable statutes at the time the lease contract was entered into in 1979. The plaintiff's argument as it relates to § 22a-432 of our statutes and the claim that it creates a continuing obligation of compliance on the defendant polluter in light of the just — mentioned lease provision rests on the first sentence of the statute.
That sentence says: "If the commissioner finds that any person has established a facility or created a condition before or after June 25, 1985, or is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he [sic] may issue an order to such person to take the necessary steps to correct such potential source of pollution."
The lease here which ran the five years was signed May 22, 1979 and ran to 1985. In 1979, the predecessor statute to §22a-432 was § 25-54k. It read: "If the commissioner finds that any person is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he [sic] may issue an order to such person maintaining such facility or condition to take the necessary steps to correct such potential source of pollution." The broader language "has established a facility or created a condition" was added by P.A. 84-239 § 1.
When the lease was signed therefore, the continuing duty obligation, encompassed by requiring compliance with state statutes, apparently did not run to the original polluter as long it was not "maintaining" the polluted condition. How can the defendant ex-tenant be said to "maintain" the condition of pollution when it left the rented property after the term of the lease? If the word "maintaining" as used in the 1979 statute is inclusive enough to cover the action of an original polluter who no longer occupies the land, why add the language that the act applies to any person who has established a facility or created aCT Page 5257condition on or before June 25, 1985 (emphasis added)? Thus, when the parties signed the lease, the applicable state statutory language would not have allowed the parties to reach an understanding that under paragraph 12 of their contract the defendant tenant was agreeing to comply with a state law which created a continuing post-lease obligation even to the state to be responsible under that law for conditions of pollution it might have created. Apart from any obligations crated by the 1984 amendment that might run from the defendant to the state, certainly the parties did not agree in 1979 that the defendant would assume these obligations, vis-a-vis the plaintiff, given the language of the operative 1979 statute. The 1984 amendment cannot be read to create a retroactive private contractual obligation between the parties to the defendant's detriment without raising serious due process questions and interfering with the private contractual relations of private parties which would not be warranted by any ascertainable public policy goal and would probably be unconstitutional.[3]
Nothing prevents the granting of this motion. There is no disputed issue of fact presented by it, only different interpretations of law. The court will therefore grant the motion as to the first count.
Corradino, J.