******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## ANGELO CURTO *v.* ROBERT D. HARTMANN, SR., ET AL.
### (AC 47129)

Cradle, C. J., and Alvord and Wilson, Js.

*Syllabus*

The defendants appealed from the trial court's judgment for the plaintiff on his claims of fraud and violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) in connection with a loan agreement between the parties. The defendants claimed, inter alia, that the court erred in finding that the three year statutes of limitations governing the plaintiff's claims had been tolled by their fraudulent concealment pursuant to statute (§ 52-595). *Held*:

The trial court correctly determined that § 52-595 tolled the statutes of limitations governing the plaintiff's fraud and CUTPA claims, as sufficient evidence supported the court's finding that the defendants intentionally concealed from the plaintiff the facts necessary to establish his claims and, due to the defendants' conduct in repeatedly and falsely representing to the plaintiff that he would be repaid, the plaintiff did not become aware of his causes of action until almost two years after the defendant H had knowingly misappropriated the loaned funds.

The trial court's punitive damages award pursuant to statute (§ 42-110g (a)) on the CUTPA claim did not constitute an abuse of its discretion, as the court reasonably could have concluded that the defendants' conduct in knowingly misappropriating the loaned funds and repeatedly engaging in deceptive acts to conceal the fraud and delay the plaintiff from pursing legal action warranted the amount of the award.

Argued May 19—officially released September 9, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of Ansonia-Milford, where the case was tried to the court, *Hon. Arthur A. Hiller*, judge trial referee; judgment in part for the plaintiff, from which the defendants appealed to this court. *Affirmed.*

*Trent A. LaLima*, with whom, on the brief, was *Virginia M. Gillette*, for the appellants (defendants).

*Juda J. Epstein*, for the appellee (plaintiff).

*Opinion*

CRADLE, C. J. The defendants, Robert D. Hartmann, Sr. (Hartmann), and HSGCHG Investments, LLC (HSGCHG),[1] appeal, following a trial to the court, from the judgment rendered in favor of the plaintiff, Angelo Curto, on his claims of fraud and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] On appeal, the defendants claim that the trial court (1) erred in tolling the statutes of limitations governing the plaintiff's claims and (2) abused its discretion in awarding excessive punitive damages to the plaintiff. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. On August 25, 2016, the defendants signed a "funding agreement" (loan agreement) with the plaintiff, pursuant to which the plaintiff loaned the defendants $100,000 to fund a concert scheduled for October 8, 2016. The loaned funds were to be spent in accordance with a proposed budget that was attached to the loan agreement. In return, the defendants agreed to repay the plaintiff the principal sum of $100,000 plus one third of the net proceeds from ticket sales for the concert.[3] Hartmann executed the loan agreement on behalf of HSGCHG and in his individual capacity, and the funds were deposited into Hartmann's account on September 1, 2016.

The defendants, however, ended up canceling the scheduled concert.[4] Consequently, the plaintiff contacted the defendants and requested repayment of the

---

[1] Hartmann is the principal of HSGCHG, which conducts business in Connecticut by and through Hartmann.

[2] Pursuant to CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a).

[3] In addition, "pursuant to the terms of the loan [agreement], Hartmann personally guaranteed [the plaintiff] repayment of all sums due and owing thereunder."

[4] It is undisputed in the record that the defendants canceled the concert due to inclement weather.

principal sum. In response, Hartmann told the plaintiff that the money had been spent on advertising and to pay performers and staff for the canceled concert. Hartmann further represented to the plaintiff that the defendants would file a claim against the insurance policy they had purchased for the concert, which they would then use to reimburse the plaintiff. In addition, Hartmann subsequently represented to the plaintiff that the concert would be rescheduled for the summer of 2017 and that the plaintiff would be reimbursed from the proceeds of that concert. The concert, however, was never rescheduled, and despite Hartmann's subsequent repeated representations to the plaintiff that he was pursuing legal action against the defendants' insurance carrier to collect on the insurance policy so that they could repay the plaintiff, no such insurance policy was ever procured or produced by the defendants.

On March 14, 2018, the plaintiff "made written demand upon the defendants for repayment of all sums due [to him]" under the loan agreement, but the defendants "failed and/or refused to comply."[5] Thereafter, on April 27, 2018, the plaintiff obtained a bank statement detailing the transactions on the account into which Hartmann had deposited the loaned funds (bank statement). Upon review of the bank statement, the plaintiff discovered that Hartmann had spent "only a minimal amount" of the funds in accordance with the loan agreement and proposed budget and, instead, had used most of the funds to pay "for his personal expenses." Specifically, on September 2, 2016, the day after the funds had been deposited, Hartmann made a payment of $38,908.25 toward his personal mortgage and a payment of $12,000 to a construction company for "something unrelated to

---

[5] In addition to not receiving repayment of the principal sum of the amount loaned, the plaintiff had not received "any portion of the preconcert ticket sales . . . [or] the advance ticket sales" from the canceled concert, as required pursuant to the terms of the loan agreement.

the [concert].'' Later that month, on September 28, 2016, Hartmann made a second payment of $38,908.25 toward his personal mortgage.

Thereafter, the plaintiff commenced the present action against the defendants by way of an eight count complaint in February, 2020.[6] On May 20, 2022, the defendants filed an answer and, on June 17, 2022, filed several special defenses related to the plaintiff's ability to recover damages under the loan agreement.[7] The case was tried to the court, *Hon. Arthur A. Hiller*, judge trial referee, on September 19 and 29, 2022. Following the conclusion of evidence on the first day of trial, the court asked the plaintiff whether he wished to amend his complaint, to which plaintiff's counsel stated that he was withdrawing five of the eight counts against the defendants and proceeding only on count one, alleging breach of contract, count four, alleging fraud against Hartmann,[8] and count five, alleging CUTPA violations against both defendants.[9] In response, the defendants,

---

[6] The plaintiff alleged breach of contract (count one), breach of common-law duty of good faith and fair dealing (count two), breach of statutory duty of good faith and fair dealing (count three), fraud (count four), violation of CUTPA (count five), unjust enrichment (count six), and civil theft (count seven). In count eight, the plaintiff "demand[ed] an accounting of how all sums borrowed . . . were used . . . by the defendants."

[7] Specifically, the defendants asserted as special defenses: (1) lack of mutual assent; (2) ambiguity; (3) lack of consideration; (4) statute of frauds; (5) illegal contract; and (6) frustration of purpose.

[8] The plaintiff alleged in count four: "Hartmann made false statements to induce the plaintiff to enter into the [loan] agreement . . . and to delay [the plaintiff from] enforcing his rights . . . thereunder. . . . [Hartmann] made false statements regarding his intention to repay [the plaintiff] and the need to pursue a claim against the defendants' insurance policy in order to repay [the plaintiff]. . . . The false representations of . . . Hartmann constituted a pattern and a continuing course of fraudulent conduct that continued up until at least March, 2018."

[9] The plaintiff alleged in count five: "The acts and conduct of the defendants as alleged hereinabove are unfair, unethical, immoral, oppressive and violative of public policy, all in violation of [CUTPA]. . . . The defendants are liable for punitive damages . . . pursuant to [CUTPA]."

through counsel, orally requested to amend their pleadings to add as a special defense that the plaintiff's fraud and CUTPA claims were barred by the respective statutes of limitations. The court instructed the defendants to file amended pleadings reflecting their new special defense of statutes of limitations and further stated that it would permit the parties to file supplemental briefs on that issue.

On that same date, the defendants filed an amended special defense and accompanying memorandum of law, in which they asserted that the plaintiff's fraud claim was barred by the three year statute of limitations pursuant to General Statutes § 52-577,[10] and the plaintiff's CUTPA claim was barred by the three year statute of limitations pursuant to General Statutes § 42-110g (f).[11] On September 22, 2022, the plaintiff filed a reply to the defendants' amended special defense, along with a supporting memorandum of law, in which he asserted: "Though the defendants are correct that the statute of limitations is three years for both fraud and CUTPA, [his] complaint affirmatively alleges, and evidence has been produced to show . . . conduct [by the defendants] . . . which constitutes fraudulent concealment [of those causes of actions]. . . . The plaintiff could not have known until he received [the bank] statement on April 27, 2018, that the [loaned funds] were [misappropriated] and/or stolen in derogation of the [loan] agreement." The plaintiff, therefore, contended that the defendants' fraudulent concealment had tolled the statutes of limitations for his fraud and CUTPA claims until April 27, 2018, "which . . . was the last in a series of

---

[10] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[11] General Statutes § 42-110g (f) provides in relevant part: "An action under [CUTPA] may not be brought more than three years after the occurrence of a [CUTPA] violation . . . ."

acts intended to obfuscate fraudulent conduct," and, accordingly, those claims had been timely brought.

On November 3, 2022, the court issued a memorandum of decision finding in favor of the defendants on the plaintiff's breach of contract claim,[12] and in favor of the plaintiff on his fraud and CUTPA claims. As to the plaintiff's fraud claim, the court found that Hartmann "committed fraud in the inducement" in that he knowingly "made false representations as statements of fact regarding how the defendants were to spend the [loaned funds] . . . in order to induce the plaintiff to provide the . . . loan." Specifically, the court found that Hartmann "used the solicitation budget [attached to the loan agreement] to induce the plaintiff to lend the defendants $100,000" to fund a concert in accordance with that budget, "knowing that [this representation was] untrue," and subsequently "spent the majority of the [loaned funds] on matters not [contemplated by] the budget [or] associated with the [concert] at all." As to the plaintiff's CUTPA claim, the court found that Hartmann, after fraudulently inducing the plaintiff into loaning the funds, misappropriated those funds "on expenses wholly unrelated to the [concert]," and that his subsequent misrepresentations to the plaintiff regarding an insurance policy and the rescheduling of the concert "were intended to, and did, obfuscate and delay the plaintiff from commencing legal action." The court found that these "deceptive acts" constituted fraud and were "immoral, unethical, and unfair, and, therefore, support[ed] a finding of CUTPA [violations]."

The court further found in favor of the plaintiff on the defendants' special defense of statutes of limitations. Although the court noted that the plaintiff had filed the present action outside of the three year statutes of

---

[12] The plaintiff does not challenge the judgment with respect to the breach of contract claim.

limitations for his fraud and CUTPA claims,[13] the court found that "[t]he plaintiff has established by clear, precise, and unequivocal evidence that the defendants fraudulently concealed [from him the existence of such] cause[s] of action." The court, therefore, concluded that the statutes of limitations governing those counts had been tolled pursuant to General Statutes § 52-595, which provides that, "[i]f any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." The court noted that "[t]he analysis of how the defendants' conduct amounted to fraudulent concealment and tolled the statute of limitations is identical" with respect to both counts. Specifically, the court found that "[t]he plaintiff repeatedly reached out to the defendants regarding the status of his repayment" and that "[t]he defendants intentionally concealed [Hartmann's misappropriation of the funds] from the plaintiff" by making repeated misrepresentations regarding how the money had been spent, the purported insurance policy, and the rescheduling of the concert. The court found that these misrepresentations, as well as the defendants' "two year delay in providing" the plaintiff with the bank statement which revealed Hartmann's misappropriation of the funds, "[were] intended to, and did, obfuscate and delay the plaintiff from discovering [the] fraud and CUTPA violations and commencing legal action."

With respect to the plaintiff's CUTPA claim specifically, the court acknowledged that in *Fichera* v. *Mine*

---

[13] The court found that the date of occurrence of the acts or omissions complained of in both counts four and five; see footnotes 8 and 9 of this opinion; was "either the date the defendants signed the loan agreement, August 25, 2016, or the date the [concert] was supposed to take place, October 8, 2016."

*Hill Corp.*, 207 Conn. 204, 213–17, 541 A.2d 472 (1988), our Supreme Court, faced with a similar issue, rejected the plaintiffs' claim that fraudulent concealment could be used to toll the statute of limitations for their CUTPA claim.[14] The trial court in the present case, however, emphasized that our Supreme Court in *Fichera* v. *Mine Hill Corp.*, supra, 216, expressly left open the question of whether fraudulent concealment could toll the statute of limitations for a CUTPA claim "in factual settings different from [that] case."[15] Because the trial court found the facts of this case to be distinguishable from

[14] In *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 206, the plaintiffs had seen an advertisement for a residential subdivision being developed by the defendants. When the plaintiffs visited the property, the defendants' sales agents represented that the development would include, among other features, a community recreation center. Id. When the plaintiffs subsequently purchased four lots in the subdivision in May, 1979, the defendants' attorney represented at the closing of title that the recreation center would be completed by May, 1980. Id. On June 16, 1981, however, the plaintiffs learned, from a letter written by the defendants' attorneys to the planning commission, that the defendants did not intend to construct the recreation center. Id., 207. In January, 1984, the plaintiffs commenced the underlying action against the defendants, alleging, inter alia, violation of CUTPA. Id., 208.

In rejecting the plaintiffs' claim that the three year statute of limitations for their CUTPA claim had been tolled by the defendants' alleged fraudulent concealment, our Supreme Court reasoned that "the only evidence of any affirmative conduct of the defendants" constituting a misrepresentation had occurred at the closing of title in 1979. Id., 214. Accordingly, although the plaintiffs did not discover that misrepresentation until June 16, 1981, the court held that their CUTPA claim was barred by the statute of limitations because the only deceptive acts by the defendants that could have formed the basis of that claim had occurred more than three years prior to the commencement of the action, and the plaintiffs had not presented any evidence of any other conduct of the defendants after the misrepresentation that had transpired in 1979 that would support a finding of fraudulent concealment. Id.

[15] The court noted that "[s]everal Superior Court cases interpret *Fichera* [v. *Mine Hill Corp.*, supra, 207 Conn. 204] as holding that fraudulent concealment cannot be applied to CUTPA claims" but concluded that "those cases do not adequately address *Fichera*'s unique fact pattern," which involved the defendants committing "an initial deceptive act, which occurred outside of the statute of limitations [for CUTPA]," but "committing no further act to conceal their [initial] wrongdoing." (Citations omitted; internal quotation marks omitted.)

those in *Fichera*,[16] it concluded that *Fichera* did not bar the application of § 52-595 to the plaintiff's CUTPA claim in the present case.

Accordingly, the court found that, pursuant to § 52-595, the defendants' fraudulent concealment had tolled the statutes of limitations for the plaintiff's fraud and CUTPA claims until April 27, 2018, the date that the plaintiff discovered the existence of such causes of action. Relying on the fact that the plaintiff commenced the present action within three years of that date, the court held that his fraud and CUTPA claims were not barred by the statutes of limitations. The defendants subsequently filed a motion for reargument and reconsideration, which the court denied. Thereafter, the court, following a hearing in damages, awarded the plaintiff $509,303 in damages, interest, attorney's fees, and costs, which included $100,000 in compensatory damages and $240,894 in punitive damages under CUTPA. This appeal followed.

I

The defendants first claim that the court erred in finding that § 52-595 had tolled the statutes of limitations governing the plaintiff's fraud and CUTPA[17] claims

[16] The court reasoned that, "[u]nlike in *Fichera* [v. *Mine Hill Corp.*, supra, 207 Conn. 214], the defendants in the present case have performed more deceptive acts other than the initial deceitful act. Specifically . . . the defendants [in the present case] made numerous false representations about repaying the plaintiff from proceeds of a second [concert] and/or insurance lawsuit, and those misrepresentations were intended to and did obfuscate and delay the plaintiff from discovering a cause of action [pursuant to CUTPA] and commencing legal action."

[17] The defendants argue that the court erred as a matter of law in applying § 52-595 to the plaintiff's CUTPA claim because "the rationale of *Fichera* [v. *Mine Hill Corp.*, supra, 207 Conn. 215–17] . . . indicate[s] [that] such tolling is not available for CUTPA claims." The defendants, however, concede in their principal appellate brief that "[our Supreme Court in] *Fichera* stated it was applying this rationale to [the] specific facts [of the present case] . . . ." In addition, during oral argument before this court, counsel for the defendants expressly conceded that *Fichera* did not hold, as a matter of law, that fraudulent concealment cannot toll the statute of limitations for CUTPA claims.

because, they argue, the plaintiff failed to present suffi-
cient evidence of fraudulent concealment. We disagree.

We begin by setting forth our standard of review and
the legal principles relevant to the defendants' claim.
"Whether a particular action is barred by the statute of
limitations is a question of law to which we apply a
plenary standard of review. . . . The factual findings
that underpin that question of law, however, will not
be disturbed unless shown to be clearly erroneous."
(Citation omitted; internal quotation marks omitted.)
*Prime Bank* v. *Vitano, Inc.*, 198 Conn. App. 136, 141,
232 A.3d 1265 (2020). "[I]t is axiomatic that [t]he trial
court's [factual] findings are binding [on] this court
unless they are clearly erroneous in light of the evidence
and the pleadings in the record as a whole. . . . A

On appeal, the defendants do not meaningfully challenge the court's find-
ing that the facts of this case are distinguishable from those in *Fichera*.
Rather, in arguing that the court improperly applied § 52-595 to the plaintiffs'
CUTPA claim in derogation of *Fichera*, the defendants rely on several Supe-
rior Court decisions "that have interpreted *Fichera* [as holding] that fraudu-
lent concealment does not apply to CUTPA claims." First, we emphasize
that this court is not bound by decisions of the Superior Court. See, e.g.,
*Freidheim* v. *McLaughlin*, 217 Conn. App. 767, 799, 290 A.3d 801 (2023).
Second, the trial court acknowledged several of the Superior Court decisions
cited by the defendants on appeal but correctly concluded that those deci-
sions had misinterpreted *Fichera*. See footnote 15 of this opinion. This court
and our Supreme Court repeatedly have held that *Fichera*, contrary to the
defendants' claim on appeal and the Superior Court decisions on which
they rely, does not stand for the premise that the statute of limitations for
CUTPA claims cannot be tolled by fraudulent concealment as a matter of
law. See, e.g., *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT
Development Corp.*, 245 Conn. 1, 46, 717 A.2d 77 (1998) (*Fichera* "does not
stand for the proposition that independent fraudulent or deceptive acts
taking place within [the] three year period [prior to the filing of CUTPA
action] that have been undertaken for the purpose of concealing actionable
conduct occurring prior to the three year period cannot independently form
the basis of a CUTPA violation"); *Randolph* v. *Mambrino*, 216 Conn. App.
126, 142 n.10, 284 A.3d 645 (2022) ("*Fichera* did not hold that § 52-595 is
inapplicable for purposes of CUTPA, only that that tolling provision did not
apply under the specific facts of that case"); see also *Normandy* v. *American
Medical Systems, Inc.*, 340 Conn. 93, 112 n.18, 262 A.3d 698 (2021) (expressly
reserving question of whether statute of limitations for CUTPA claims may
be equitably tolled). Accordingly, the defendants' argument is without merit.

finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *K. S.* v. *R. S.*, 350 Conn. 692, 750, 326 A.3d 187 (2024).

"The question before us is whether the [plaintiff] [has] adduced any credible evidence that . . . the defendants fraudulently concealed the existence of the [plaintiff's] cause[s] of action. To meet this burden, it was not sufficient for the [plaintiff] to prove merely that it was more likely than not that the defendants had concealed the cause[s] of action. Instead, the [plaintiff] had to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence. . . . Under our case law, to prove fraudulent concealment, the [plaintiff] [was] required to show: (1) [the defendants'] actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiff's] cause[s] of action; (2) [the defendants'] intentional concealment of these facts from the [plaintiff]; and (3) [the defendants'] concealment of the facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on [his] cause[s] of action." (Internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 745–46, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021). "Generally, fraudulent concealment requires a showing of affirmative acts of concealment." Id., 749.

On appeal, the defendants challenge the court's finding of fraudulent concealment only with respect to the second element.[18] Specifically, they argue that the plaintiff established the facts necessary for his fraud and

<hr />

[18] The defendants argue that the court erred in applying § 52-595 to the plaintiff's claims because he failed to " 'affirmatively plead [fraudulent concealment]' " in his reply to the defendants' special defense of statute of limitations. (Internal quotation marks omitted.) In its memorandum of deci-

CUTPA claims on the date of the canceled concert, and, therefore, the court erred in finding that the defendants had intentionally concealed such facts on the basis of their subsequent misrepresentations to the plaintiff. In support of their claim, the defendants rely on the plaintiff's testimony at trial that, pursuant to his understanding of the loan agreement, he would receive proceeds from ticket presales *prior* to the October 8, 2016 concert. On the basis of that testimony, the defendants contend that the fact that the plaintiff had not received any such proceeds by the date of the scheduled concert should have put him on notice that the defendants "never intended to meet [their] repayment obligations."[19] Accordingly, the defendants contend that the plaintiff "had sufficient [facts] to make a [fraud and CUTPA] claim from the moment the concert date passed in October, 2016," and, therefore, the "[l]ater obfuscations [by the defendants] described by the trial court" are insufficient to support the court's finding that the defendants had intentionally concealed from the plaintiff the facts

sion, the court noted that, "[a]lthough the plaintiff did not specifically cite § 52-595 in [his] reply, the plaintiff did discuss fraudulent concealment and cited . . . case law discussing § 52-595." Accordingly, the court interpreted the plaintiff's reply as "making the argument that the statute of limitations is tolled because of fraudulent concealment pursuant to . . . § 52-595 . . . ."

On appeal, the defendants argue that the court erred in "interpret[ing] [the plaintiff's reply] as sufficiently pleading fraudulent concealment" because the plaintiff, in his reply and supporting memorandum of law, "did not analyze [the] facts [of the case] under the three prong test for fraudulent concealment." The defendants, however, fail to cite any supporting authority for their claim or advance a substantive legal or factual argument in support of their contention that such an analysis is necessary to sufficiently plead fraudulent concealment. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). Accordingly, because the defendants' argument that the plaintiff failed to sufficiently plead fraudulent concealment is inadequately briefed, we decline to review it.

[19] See footnote 5 of this opinion.

necessary to establish his fraud and CUTPA causes of action. We are not persuaded.

The court, in addressing the second element, found that "[t]he plaintiff repeatedly reached out to the defendants regarding the status of his repayment," and "[t]he defendants knew . . . that Hartmann [had] spent the [funds] on matters unrelated to the [concert]," but the defendants "intentionally concealed this fact from the plaintiff by making false representations that Hartmann [had] spent the money [on expenses] for the [canceled] concert" and that "the defendants would reimburse the plaintiff from an insurance policy payout . . . [or] proceeds from a subsequent [concert]." On the basis of those findings, the court concluded that "the plaintiff did not become aware of his cause[s] of action for fraud [and CUTPA violations] until . . . April 27, 2018," when he obtained the bank statement revealing Hartmann's misappropriation of the funds and, thus, learned that the foregoing representations by Hartmann had been false.[20] We agree with the trial court's conclusion that, contrary to the defendants' claim on appeal, the fact that the plaintiff had not received any presale ticket

[20] As we stated previously, the court additionally found that the defendants' "two year delay" in providing the bank statement to the plaintiff "was intended to, and did, obfuscate and delay the plaintiff from discovering [the] fraud and CUTPA violations . . . ." On appeal, the defendants argue that, because they owed no fiduciary duty to the plaintiff, the court "improperly used [that] delay . . . as a basis for fraudulent concealment" because "[t]his places a duty to disclose on the [defendants] that is barred by [our] case law." See, e.g., *Medical Device Solutions, LLC* v. *Aferzon*, supra, 207 Conn. App. 751 (declining to hold that "violation of a contractual duty to disclose in the absence of a fiduciary duty is sufficient to constitute fraudulent concealment"). The defendants' argument, however, is misplaced because it mischaracterizes the court's memorandum of decision. The court's finding of fraudulent concealment in this case did not rely on the defendants' mere failure to notify the plaintiff of Hartmann's fraud but, rather, the "affirmative steps" taken by the defendants afterwards "to conceal that [fraud], as evidenced by [the defendants' repeated misrepresentations to the plaintiff]." See *Medical Device Solutions, LLC* v. *Aferzon*, supra, 752 (in absence of fiduciary duty, evidence of "additional fraudulent behavior" beyond mere nondisclosure can toll statute of limitations pursuant to § 52-595).

proceeds by the date of the scheduled concert, in and of itself, was insufficient to demonstrate that the plaintiff was aware of actionable fraud and CUTPA claims against the defendants. Although this may have provided the plaintiff with the facts necessary to establish a cause of action for breach of contract, we cannot conclude that it would have provided the plaintiff with the facts necessary to establish his fraud and CUTPA claims, which were predicated on Hartmann's misappropriation of the loaned funds and his subsequent misrepresentations to the plaintiff. We further conclude, on the basis of our thorough review of the record, that the trial court's findings were supported by sufficient evidence. The court heard ample witness testimony describing Hartmann's repeated misrepresentations in response to the plaintiff's requests for repayment following the cancelation of the concert.[21] Furthermore, the plaintiff explicitly testified that he did not discover

---

[21] Specifically, the plaintiff testified that he "requested [his] money back" shortly after the concert was canceled and told Hartmann that they could just "void the loan" if the defendants refunded the principal sum, but Hartmann represented that he was unable to do so because he already had spent the funds on expenses related to the canceled concert. The court also heard testimony from Brian Mahoney, who, acting as the plaintiff's agent, drafted the loan agreement and served as a broker between the parties. Mahoney testified that he also asked Hartmann about the status of the money owed to the plaintiff, and Hartmann represented that "he spent all the [loaned funds] on the [canceled concert]," that the defendants had "some kind of insurance, which . . . should . . . [cover] the cost of the [canceled concert]," and that the defendants "[were] going to reschedule the [concert]." Mahoney further testified that, when he followed up with Hartmann "months . . . after" the cancelation of the concert, Hartmann again represented that he "[does not] have the cash [to repay the plaintiff] right now but [the defendants were] suing [their insurance carrier] and were going to get the new [concert] scheduled as soon as [they could]."

Finally, the court was presented with copies of emails between Mahoney and Hartmann, which included a March 7, 2018 email in which Hartmann himself stated that he had told the plaintiff that the "[loaned] funds [had been] spent on advertising, staff, and entertainment" for the canceled concert and that "[the defendants] have filled [out a claim] with [their] insurance carrier" in order to get the proceeds to repay the plaintiff. As stated herein, the court found, and the evidence supports, that neither representation Hartmann admitted to making was truthful.

that Hartmann's numerous representations following the cancelation of the concert were false, and that Hartmann in fact had misappropriated the loaned funds to pay for his personal expenses, until he obtained the bank statement in April, 2018.[22]

Accordingly, on the basis of our examination of the trial court's findings and the evidentiary record in support thereof, we conclude that the trial court correctly found that the defendants intentionally concealed from the plaintiff the facts necessary to establish his fraud and CUTPA claims and that the court properly determined that the statutes of limitations were tolled by the defendants' fraudulent concealment.

II

Next, the defendants claim that the court abused its discretion in awarding the plaintiff an excessive amount of punitive damages under CUTPA. We disagree.

Pursuant to CUTPA, "[t]he court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." General Statutes § 42-110g (a). "Awarding punitive damages . . . under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. . . . In order to award punitive . . . damages, evidence must reveal a reckless indifference to the rights of others or an intentional

---

[22] In addition, the court reasonably could have inferred from the emails between Hartmann and Mahoney, and the plaintiff's March 14, 2018 letter of demand to the defendants, that, in March, 2018, sixteen months after the concert had been canceled, the plaintiff still was unaware that Hartmann had used the loaned funds on expenses unrelated to the concert and that his representations regarding how the funds had been spent and a purported insurance policy were not truthful. See, e.g., *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 110, 912 A.2d 1019 (2007) (in proving fraudulent concealment, "[p]roof by circumstantial evidence is sufficient where rational minds could reasonably and logically draw the necessary inferences" (internal quotation marks omitted)).

and wanton violation of those rights. . . . Awarding punitive damages based on a multiple of a plaintiff's actual damages is a recognized method for determining punitive damages under CUTPA. . . .

"In determining whether a punitive damages award pursuant to § 42-110g (a) is so excessive as to constitute an abuse of discretion, we look to the factors that the United States Supreme Court discussed in *Exxon Shipping Co.* v. *Baker*, 554 U.S. 471, 503, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008)." (Citations omitted; internal quotation marks omitted.) *Pointe Residential Builders BH, LLC* v. *TMP Construction Group, LLC*, 213 Conn. App. 445, 461–62, 278 A.3d 505 (2022). Those factors include, among others, "the degrees of relative blameworthiness, i.e., whether the defendant's conduct was reckless, intentional or malicious . . . whether the wrongdoing was hard to detect . . . [and] whether the . . . compensatory damages were small, providing a low incentive to bring the action . . . ." (Citations omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 454, 78 A.3d 76 (2013).

At the hearing in damages, the plaintiff's counsel requested that the court award $300,000 in punitive damages under CUTPA, an amount equal to three times the compensatory damages. In response, counsel for the defendants argued that the defendants' conduct did not warrant an award of punitive damages. Specifically, the defendants' counsel noted that the bank statement reveals that the defendants had made several payments, totaling $19,701.72, on expenses related to "an actual concert,"[23] which, according to counsel, demonstrated

---

[23] As we stated previously in this opinion, the court found that Hartmann, after receiving the plaintiff's loaned funds in September, 2016, had used $89,816.50 of the plaintiff's $100,000 loan to make three payments, two to his mortgage company and one to a construction company, for "expenses wholly unrelated to the [concert]." We note for clarification that, on the basis of our thorough review of the record, we do not interpret the argument of the defendant's counsel at the hearing in damages as claiming that the defendants spent $19,701.72 *of the plaintiff's $100,000 loan* on expenses

"that [the defendants had] some intention to actually [put on a concert and] pay back the plaintiff . . . even if they [were not] honest about where the money would go." The court disagreed that punitive damages were not warranted, emphasizing that "there was evidence [that Hartmann] used [some of the loaned funds] for his own [benefit] along the way, including paying his mortgage off . . . and [then] lie[d] about insurance for the [concert]." In other words, Hartmann had "cheated [the plaintiff] out of that money and used it where it [was not] supposed to be used . . . ." The court, however, concluded that the proper base for its calculation of punitive damages was $80,298.28, which was equal to the plaintiff's compensatory damages of $100,000 minus the $19,701.72 that the defendants had put toward an actual concert. The court then multiplied that base figure by three, resulting in approximately $240,894 in punitive damages under CUTPA.

On appeal, the defendants argue that the amount of the court's punitive damages award was excessive, and therefore an abuse of its discretion, because the factors discussed previously in this section "favor a smaller award in this case." The defendants advance several arguments in support of their claim, none of which we find persuasive.

First, the defendants argue that "some of the [loaned] funds went to legitimate concert expenses, showing a true intent to arrange the concert," thereby "mov[ing] [the defendants'] conduct, and failure to repay [the plaintiff], from malicious to reckless." We do not agree

related to the concert. The record indicates that the total projected budget of the concert was $300,000, and, thus, the plaintiff's $100,000 loan only partially funded the concert, with the remaining $200,000 to be funded by the defendants themselves and/or by third parties other than the plaintiff. Accordingly, on our review of the record, we interpret counsel's accounting of the defendants' expenditures, which the plaintiff did not challenge, as claiming that, out of the *entire* $300,000 budget for the concert, a total of $19,701.72 had gone toward expenses related to an actual concert.

with the defendants' interpretation of the evidence,[24] and, even if we had, it would provide no basis to conclude that the court's award of punitive damages was excessive. We reiterate that the specific conduct that the court found to have violated CUTPA, and, therefore, the factual predicate for its award of punitive damages, was Hartmann's *misappropriation of the funds*, coupled with his subsequent misrepresentations to the plaintiff to conceal that fraud. Thus, the court's award of punitive damages was not predicated on the defendants' intent, or lack thereof, in entering the loan agreement, but, rather, the fact that Hartmann, irrespective of his initial intent, subsequently used a significant portion of the loaned funds for his personal expenses in derogation of the loan agreement.[25]

Next, the defendants argue that "[their] wrongdoing was not hard to detect" because the plaintiff had loaned the funds pursuant to a written agreement, and, therefore, "the funds were not taken surreptitiously" and "[t]he [plaintiff] was always going to become aware [that] his funds were taken and not returned." This argument merits little discussion. As stated herein, the violation of CUTPA, and, thus, the court's award of punitive damages, was predicated on Hartmann's surreptitious misappropriation of the loaned funds for his own benefit and his subsequent "deceptive acts" which were intended to, and did, prevent the plaintiff from

---

[24] We are not convinced that a few concert related transactions totaling $19,701.72, which amounts to a mere 7 percent of the $300,000 total budget for the scheduled concert, evinces the defendants' genuine intent to put on an actual concert. Moreover, the defendants fail to meaningfully explain how Hartmann's knowing misappropriation of 80 percent of the plaintiff's loaned funds for his own benefit was reckless, rather than malicious, merely because he had not misappropriated *all* of the funds allocated for the concert.

[25] Indeed, the basis of the court's award of punitive damages—Hartmann's misappropriation of the funds—is plainly evident from the fact that the court expressly excluded from its calculation the amount of money that the defendants had spent on expenses related to an actual concert.

becoming aware that his money had been taken and would not be returned.

Finally, the defendants, without citation to any supporting authority, argue that the amount of the court's punitive damages award was excessive because the compensatory damages award was "already a significant amount . . . ." As we stated previously, "[a]warding punitive damages based on a multiple of a plaintiff's actual damages is a recognized method for determining punitive damages under CUTPA"; (internal quotation marks omitted) *Pointe Residential Builders BH, LLC* v. *TMP Construction Group, LLC*, supra, 213 Conn. App. 461; and our Supreme Court has upheld punitive damage awards that were calculated in a manner consistent with the method used by the court in the present case. See, e.g., *Ulbrich* v. *Groth*, supra, 310 Conn. 456 (court did not abuse its discretion in awarding punitive damages under CUTPA equal to three times compensatory damages); *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 486, 871 A.3d 981 (2005) (same).

Under the circumstances of the present case, we cannot conclude that the court's award of punitive damages constituted an abuse of its discretion. Rather, we conclude that the trial court reasonably could have concluded that the defendants' conduct, which included Hartmann's knowing misappropriation of the loaned funds for his own benefit almost immediately after they were deposited into his account, together with the fact that Hartmann, for a period of almost two years thereafter, repeatedly engaged in "deceptive acts" intended to conceal his fraud and delay the plaintiff from pursuing legal action, warranted the amount of the award. See *Ulbrich* v. *Groth*, supra, 310 Conn. 456. Accordingly, we conclude that the amount of the trial court's punitive

damages award did not constitute an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

————————————